Douglas Scott McAlpin

PO Box 4311

Helena, MT 59604

douglasscottmcalpin@gmail.com

Pro se



JAN 08 2021
Clerk, U.S. Courts
District of Montana
Missoula Division

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

## MISSOULA DIVISION

| | |
|---|---|
| Douglas McAlpin, | ) |
|     Pro se Plaintiff, | ) Case No. |
|     Vs. | ) DIVERSITY OF CITIZENSHIP |
| Robert B. Clem..(sp? 6/25/91 Affidavit), Detective Green, | ) FOR CONSPIRACY TO |
| Detective Ronnie Perry, Dent Morriss, Jerome Converse, | ) OBSTRUCT JUSTICE AND |
| Judge James E. Walton ,AttorneyGeneral of Tennessee, | ) DENY RIGHTS AND |
| The State of Tennessee | )     PRIVILEGES |

## COMPLAINT

01.    COMES NOW Plaintiff Douglas Scott McAlpin, as Pro se Plaintiff, and hereby files the following Complaint of Conspiracy to Obstruct Justice by Denying Rights and Privileges under Color of Law against Defendants as captioned above. Plaintiff Requests a Jury trial to resolve this complaint.

## INTRODUCTION

## INTRODUCTION

02.   This case arises from the State of Montana's *current application* of its SVOR Law that *retroactively applies the duty to register with the State of Montana's SVOR to any individual ever convicted of a Violent Offence in any State,* to the Plaintiff. This obligation has been contested, as well as the evidence being used to prosecute Plaintiff if he fails to register, ever since it was applied to him in 2005 by the State of Montana. However, Plaintiff lacked the *crucial evidence that has just been uncovered, and went about it in an inarticulate manner filled* with anger and resentment for a situation that Plaintiff has had no control over, and has found no relief for this distressed state of being. Plaintiff has a well established mental disability and receives SSI because of it. Furthermore, this document in itself would not have been possible without  assistance to help better articulate Plaintiff's claims and facts.

03.   This case involves a Diversity of Citizenship claim and Federal Questions of Law concerning a conspiracy among officials in the State of Tennessee to Obstruct Justice by denying the rights and privileges of Plaintiff. This was done by falsifying reports to falsely arrest, then *fabricate crimes to maliciously prosecute and imprison* Douglas Scott McAlpin, the Plaintiff, under the color of State Law.  Between June 23, 1991 and June 19, 1992, these Defendants, each in their individual capacity, did engage in unlawful acts in the furtherance of this conspiracy to Obstruct Justice and deny Plaintiff's rights and privileges under color of the Law that is harming and affecting Plaintiff's life in a dramatically negative way to this present day, via the State of Montana's SVOR.

## JURISDICTION AND VENUE

04.   Plaintiff brings this action to redress the Conspiracy to Obstruct Justice, under color of state law, and the deprivation of the rights against Illegal Searches and Seizures of the 4th

Amendment, the right to effective Assistance of Counsel of the 6th Amendment, and the denial of confrontation of the State's charges through a meaningful adversarial proceeding.The denial of Due Process and Equal Protection clauses of the Fifth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

05.    This Court has original jurisdiction of the Diversity of Citizenship claims presented herein pursuant to Art. III sec. 2 of the US Constitution, and 28 U.S.C. §§ 1332, **(a)**The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— **(1)**citizens of different States;

06.    This Court has original jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331, which confers on district courts subject matter jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

07.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: **(a)** any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

**(1)**To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

PARTIES

Defendant No. 01:

Name: Robert B. Clem..(sp? 6/25/91 Affidavit)

Job or Title: Signed June 25, 1991

Employer: Robertson County

Address: Unknown

Capacity: Individual and Official


Defendant No. 02:

Name: Detective Green

Job or Title: Detective

Employer: Robertson County Sheriff's Office

Address:  507 S Brown St, Springfield, TN 37172

Capacity: Individual and Official


Defendant No. 03:

Name: Detective Ronnie Perry

Job or Title: Detective

Employer: Robertson County Sheriff's Office

Address: 507 S Brown St, Springfield, TN 37172

Capacity: Individual and Official


Defendant No. 04:

Name: Dent Morriss

Job or Title: Assistant Attorney General

Employer: Robertson County Attorney's Office

Address: 502 S. Main St., Springfield, TN 37172

Capacity: Individual and Official


Defendant No. 05:

Name: Jerome Converse

Job or Title: Attorney

Employer: Self

Address: 514 S. Main, Springfield, TN 37172

Capacity: Individual and Official


Defendant No. 06:

Name: Judge James E. Walton

Job or Title: Judge

Employer: State of Tennessee

Address: 501 S Main St Courthouse, Room 109 Springfield, TN  37172

Capacity: Individual and Official

Defendant No. 07:

Name: Attorney General of Tennessee

Job or Title: Attorney General

Employer: People of the State of Tennessee

Address: P.O. Box 20207 Nashville, TN 37202

Capacity: Official


Defendant No. 08:

Name: Governor of the State of Tennessee on behalf of the State

Job or Title: Governor

Employer: People of the State of Tennessee

Address: Governors' Office

Capacity: Official


FACTUAL BACKGROUND


*As of this date. Further investigation and discovery may be necessary and the product of such may result in new or different defendants, witnesses, exhibits, and issues relating to causation and damages. Therefore, this Complaint is not intended to be a complete statement of Plaintiff's theories, witnesses or exhibits; rather, it is an initial assessment of the same, subject to ongoing supplementation.*

08.   As alleged herein, all conduct by Defendants occurred under color of state law.  Plaintiff has a constitutional right pursuant to the Fourteenth Amendment to the U.S. Constitution to Equal Protection of the laws and substantive and procedural due process, and a Sixth Amendment right to Effective Assistance of Counsel, and a right to confrontation. Plaintiff has a Constitutionally protected interest to be free from arbitrary and capricious actions that stigmatize him and create or disseminate a defamatory impression regarding his conduct.

09.   Plaintiff's case began on June 23, 1991 when Plaintiff and Ms. Rita Scott(Clark) went into the Robertson County Sheriff's Office to report a crime that was committed by Danny James McAlpin, Plaintiff's long estranged father. Plaintiff technically had only known and had lived with his father for the prior three weeks leading up to the events that were reported to Law Enforcement by Plaintiff and his then girlfriend, Ms. Rita Scott. The document titled (Exhibit 01) is the Official Affidavit on the arrest warrant for Danny James McAlpin. It is a brief summation of both Plaintiff's and Ms. Scott's statements to the Sheriff's Office concerning Danny's activities on the night of June 21, 1991. This document is not clear on Danny's motive to commit first degree murder, and looks more like an Affidavit for Voluntary Manslaughter than one for F.D.M as it is absent of facts concerning premeditation. However, one thing that is clearly evident from this document is that *both Plaintiff and Ms. Scott were unaware of Danny's actions at the time they had occurred,* and that Plaintiff was made to drive his intoxicated father to clean up after the fact, and then was threatened along with Ms. Scott and her children, to insure both cooperation and silence via coercive threats.

10.   After Plaintiff and Ms. Scott had given their statements to Law Enforcement, they returned to Ms. Scotts residence where Plaintiff resided with Ms. Scott and her family after the incident, until June 26, 1991. After running a check on Plaintiff's name and seeing a past record,

Detective Ronnie Perry then conspires to implicate Plaintiff in the actions of his father, even though all of the Detectives' evidence proves otherwise. (Exhibit 02) is an Affidavit of probable cause to arrest Plaintiff as a material witness, hand signed and dated on June 25, 1991, as can be seen notated twice on this document. The problem with this Affidavit however, is that all of the details and facts listed were added the day after it was signed. The next day, on June 26, 1991, the Affiant then fills in the missing details, explaining why Plaintiff's arrest as a material witness was absolutely necessary for a preliminary hearing that was to be held on July 1, 1991. However, the evidence will show that the preliminary hearing was never held. The alleged events detailed by Detective Green as evidence to validate Plaintiff's arrest had not yet happened at the time of the signing of the document, and then hearsay statements were used with no substantiantiating evidence to support them. This constitutes a false arrest as the State of Tennessee lacked sufficient probable cause; it is also evident that no actual evidence was submitted to substantiate the arrest as it was signed a day before, and hearsay statements were then used as details in support of it.

11.   There was no evidence implicating the Plaintiff in the crimes committed by Danny McAlpin on the night of June 21, 1991 until Detective Ronnie Perry claimed to have received a note from Danny McAlpin asking to make a statement. It was also alleged by Detective Perry that on that very same day, Danny also attacked his jailers. This is documented in (Exhibit 03) titled June 30, Affidavit. This document is strange in content and took place a day before Danny's preliminary hearing was to be held. The Affidavit claims that Danny is lying in wait for the jailers with a pointed shower handle and starts striking them, even hitting one in the head stating that he has to get out of there. However, the only person that was hurt that day was Danny, and the warrant for aggravated assault (Exhibit 04) was signed on July 2, 1991.

However, that charge was dismissed the same day that Plaintiff's warrant for material witness was dismissed January 26, 1993.

12.    Detective Perry then records Danny's confession that starts off as a confession for *Voluntary Manslaughter* as he states: "[W]hen she started mentioning that . . . Scott was looking at this lady's kids with derogatory things, it topped me off, man, and I said "screw it." And I took her along side the road and stabbed the s[***] out of her." The petitioner described the event as follows: I says, "come on out of the car." She stepped out of the car and I didn't even stop..."(Exhibit 05 #12)  Danny's confession then goes on to state the following: "And Scott and Rita were both for this thing. Scott put the scabbard on the belt and I put the belt on. . . . the only thing Scott didn't do, ha, ha, is do the job. But he wanted her dead and so did Rita. And I mean, if I didn't have that support behind me[,] I wouldn't have even thought about it. I mean I thought they, alright, they're not going to be talking, I can get this silly bitch out of our life. I mean she was a leach on everybody, she was a druggie. She had people after her wanting to kill her. . . . and I come home, I honked the horn and [Scott] came up and drove me [to] another area to where I could wash the blood off my arm. . . . I figured if I was going to get caught, I'll get caught. . . . I'm not the kind of person that can handle it anyway. I'd of probably ended up coming to you guys after a little bit. ***But uh, I was just . . . enraged*** and as far as I was concerned I was supported one hundred percent by Scott and Rita. . . . " Then on July 3, 1991 Plaintiff was then indicted by Detective Ronnie Perry using Danny's taped confession as evidence for Aiding and Abetting First degree Murder. (Exhibit 06)

13.    Danny starts off his confession by admitting to a heat of the moment killing or voluntary manslaughter, which lines up with the statements made in (Exhibit 01) and on June 23, 1991. But then in the presence of Detective Perry, Danny McAlpin then confesses to the crime of

Conspiracy to Commit First Degree Murder naming Plaintiff and Ms. Scott as his co- defendants, and even goes so far as to say that he probably would not have even thought of doing it had he not had *our* support. Danny then adds for dramatic effect the comment about his super "squeamish" nature stating, "I'm not the kind of person that can handle it anyway. I'd of probably ended up coming to you guys after a little bit. ***But uh, I was just . . . enraged*** and as far as I was concerned I was supported one hundred percent by Scott and Rita. . . . " Given the evidence in his possession Detective Perry has to know that Danny is not telling the truth, because he has to know from the facts already at hand that neither Plaintiff nor Rita Scott supported Danny's en-devour, if *we* had supported him *we* would not have gone to the Sheriff together on the 23rd and reported it. If Ms. Scott had been for it and had wanted the victim dead, Danny would never have had to threaten her or her children's lives if she ever told Police. Danny claims, " I'm not the kind of person that can handle it anyway. I'd of probably ended up coming to you guys after a little bit," yet threatens to kill another woman and her children if she tells.

14.   Detective Ronnie Perry went to the Grand Jury on July 3, 1991 with a confession he knows to be false, and he then uses it as the foundation to indict Plaintiff for Aiding and Abetting Danny McAlpin in First Degree Murder. This constitutes the fabrication of evidence on the part of Detective Perry. Plaintiff was simply a Material Witness on June 26th. However, the day before the preliminary hearing that Plaintiff is being held to testify at, Danny McAlpin then allegedly attacks the guards, yelling, "I've got to get out of here," then confesses against the advice of his attorney (Exhibit 05 # 12 ) implicating Plaintiff and Rita Scott in the murder of his victim. Plaintiff is then subsequently indicted literally the next day, tried and then convicted for Voluntary Manslaughter.

15.    (Exhibit 05) is Danny McAlpin's appeal of denial of post conviction relief for ineffective

assistance of counsel. The most telling and important information concerning the conspiracy

against Plaintiff comes from Danny himself, beginning with the last paragraph on page 3 of the

McAlpin appeal. It states, "***The petitioner complained that his trial counsel did not meet with***

***him prior to the preliminary hearing and that he had no recollection of having such a***

***hearing***...(Plaintiff was arrested as a witness for that hearing that Danny doesn't remember

having) ..Failed to file a motion to suppress his confession,..***He complained that his confession***

***was coerced*** and that his trial counsel had a conflict of interest because he refuse to take action

against ***the jailers that had beaten him during his pretrial incarceration***." (Ex. 05 #12)

"Detective Ronnie Perry of the Robertson County Sheriff's Department denied that the petitioner

had been mistreated at the jail and contended that the petitioner had injured several of the

employees there ( Ex. 03). He recalled that he had received a note from the petitioner just before

the trial (Preliminary Hearing) asking to make a statement. Detective Perry testified that the

petitioner signed a waiver, was advised of his rights, and was informed that he needed to talk

with his attorney before making the statement. According to the Detective, the petitioner made a

taped statement, against the advice of his trial counsel, during which he admitted stabbing the

victim, saying,... "(Exhibit 05 #12)

16.    When we shine the light of truth upon these pieces of this puzzle that have affected

Plaintiff's life so dramatically, taking Danny's comments of his confession being coerced in this

light, we see Danny was actually telling the truth. We know this because of the paper trail that

was left behind to follow. On June 23, 1991 , Ms. Scott and Plaintiff reported Danny's crime. It is

even documented that Danny threatened to kill both Ms. Scott and her children if she went to the

police. Plaintiff is free to go after giving them the details to arrest Danny. After running

Plaintiff's name, the State of Tennessee then conspired to implicate Plaintiff in Danny's crime and signed the Affidavit for Plaintiff's arrest as a material witness on June 25, 1991 , as they had yet to figure out how to implicate Plaintiff and wanted to make sure that he was safely in their hands while they did so. Then on June 26, 1991, two hearsay statements were added to the Affidavit and Plaintiff is then arrested. The Judge never bothered looking at the evidence, as there was not any, as he had signed the Affidavit the day before any evidence was added thus denying Plaintiff Due Process of Law.

17.    It is clear from the evidence that Danny McAlpin's confession was indeed coerced to illicit false details implicating Plaintiff and Ms. Scott in the killing of the victim when neither of *us* had anything to do with it. There was no evidence implicating Plaintiff in this killing until Danny McAlpin's coerced confession that detailed a fictitious Conspiracy to Commit First Degree Murder that implicated Plaintiff and Ms. Scott. This fictitious conspiracy from Danny's coerced confession is then reiterated as a factual summary to the Appellate Court in the McAlpin Appeal(Ex. 05). If this story had been true, then Ms. Rita Scott would have had to have known what Danny was going to do when he did it, and should have at least called Law Enforcement to report the Crime on June 21,1991 and would also be guilty of Aiding and Abetting Danny for failure to report the crime, and Danny did say Rita wanted her dead also, and that he had her support 100%.

18.    (Exhibit 05) The McAlpin Appeal document also contains false statements about the Plaintiff that are derogatory in nature. In quote they are as follows, "She stated that she did not believe that the petitioner was guilty of the murder and was aware that her step-brother had *entered a plea of guilty to voluntary manslaughter.* (Ex. 05 #10) and (Ex. 05 #21) "Moreover, it was only after McAlpin (Plaintiff) *had entered a plea of guilt to voluntary manslaughter* that he

recanted his statement to the Police and testified on behalf of the petitioner at his trial,...".

Plaintiff was Indicted for Aiding and Abetting F.D.M. but was then convicted by Jury Trial for

Voluntary Manslaughter, *before Danny was ever tried for the actual crime*. (Exhibit 07)

Detective Perry's investigation proves that Plaintiff was not at the scene and had nothing to do

with the killing and therefore could not have killed the victim in the heat of the moment as

Plaintiff was never at the crime scene and had no idea it was even happening.  These statements

about a guilty plea, actually imply that Plaintiff somehow admitted his guilt to the charge, when

the reality is that Plaintiff was convicted by a Jury through the manipulation of the facts by the

State of Tennessee, when those facts in truth state Plaintiff was not there, and had nothing to do

with the killing, had no idea it was even happening, and that Danny McAlpin did indeed act upon

his own volition without the support of Plaintiff or Ms. Rita Scott.

19.    Ronnie Perry, by his own investigation, knew that Plaintiff was not at the scene, and had

nothing to do with the killing, as he has testified to those very facts. (Exhibit 05 #20, 21) He also

knew that Danny's confession was coerced and that it contained false statements, yet he used it in

falsely charging Plaintiff as an accomplice to murder. He then sat at Plaintiff's Trial and allowed

the Prosecution to knowingly distort the facts in order to convince a Jury to send Plaintiff to

prison for killing a woman when Plaintiff had done no such thing. The Prosecution knew that

Plaintiff was not guilty of Voluntary Manslaughter as they were in possession of these same

exhibits and facts, and had a duty to investigate the charges and to insure justice is served, yet

that did not stop Dent Morriss from getting his man, even though that man is actually innocent of

the crime of Voluntary Manslaughter. Judge Walton, at Plaintiff's trial, had all the facts and

evidence in his possession and had a Constitutional duty to uphold Plaintiff's rights to insure that

Plaintiff received a fair and impartial trial. A simple review of the listed exhibits should have led

Judge Walton to pose some serious questions as to why the State's case took on much more color and definition after Danny's confession. A big red flag for Judge Walton should have been that Danny's confession implicated two individuals as accomplices in a conspiracy to commit murder, yet only one of them was being tried for a crime. The Judge then allows Plaintiff to be tried as an accomplice, *before the State had ever proven its case against Danny*.

20.    Plaintiff had an Attorney Client relationship with Mr. Converse which constituted a contract between himself and Plaintiff, and by law was entitled to truthful and trustworthy information, and competent representation. As Plaintiff's Attorney, Mr. Converse's first obligation was to uphold his client's rights and subject the Prosecution's case to the crucible of meaningful adversarial testing. It is evident that Mr. Converse never bothered to investigate Plaintiff's case which is a basic fundamental requirement for the effective representation of a client's case. Jerome Converse could not have read the documents from June 23, 1991 that prove that neither Ms. Scott or Plaintiff had any pre knowledge of the crime and in no way had influenced nor supported Danny McAlpin in committing first degree murder. The disparity between those statements and Danny's taped confession by Detective Perry implicating Ms. Scott and Plaintiff, in what would actually be considered a conspiracy to commit first degree murder rather than aiding and abetting, should have been obvious to a trained lawyer that had investigated and was in command of the facts and laws concerning his client's case. The most telling fact of Mr. Converse's negligence is that he did not even bother to cross examine Ms. Scott on the witness stand about the differences in the story she told Law Enforcement on June 23, 1991 and her story after Danny's coerced confession. In the first account, she and Plaintiff are oblivious to Danny's actions. In the latter, she should be well aware of what Danny is doing

when he did it, and was just as supportive of the killing as Plaintiff was said to have been, then failed to call police to report the crime after Danny made Plaintiff drive him to clean himself off.

21.    According to the summation of facts used in the McAlpin appeal (Ex. 05) to describe the activities on the night of June 21, 1991, one can see how vastly different the story changes from its original form on June 23, 1991 in which Danny McAlpin acted alone without any mention whatsoever as to a motive to his premeditation, into a full blown conspiracy where his actions are alleged to have been supported by Ms. Scott and Plaintiff. Detective Perry was absolutely certain that Plaintiff was not guilty of Aiding and Abetting First Degree Murder when he recorded the confession he coerced from Danny that implicated the Plaintiff. It must be noted for future argument that after the State of Tennessee had illegally indicted Plaintiff using Danny's illegal confession, that confession was then used to influence Ms. Scott to change her testimony to implicate Plaintiff as an accomplice to Danny's actions, when he had not been one before. The most telling facts that prove this come from the Summation of Facts from the McAlpin Appeal. Accordingly, it is said that  Rita Scott hears Plaintiff say that he would like to kill the victim, and then debates with Danny about the victim's alleged accusations concerning Plaintiff, and then the back and forth confrontations with the victim. It's then said, Plaintiff then offers to drive the victim to a friend's. However, Danny says in dramatic fashion, "No, I'll take her out." Rita Scott at this point would have been terrified of both Plaintiff and Danny McAlpin, and should have no doubt about what is about to happen. When Plaintiff left with Danny, Ms. Scott should have called the police and reported the crime, implicating Plaintiff as an accomplice then, rather than after Danny confesses implicating her in his murder. Instead, Ms. Scott allowed Plaintiff to move in with her family, and assist her in paying the rent as Danny's Apartment was closed off as a crime scene. It is Ms. Rita Scott's continued interaction with the Plaintiff after the events of June

21, 1991 that prove that the story presented in the summation of facts in the McAlpin appeal were derived through the manipulation of facts using Danny McAlpin's coerced confession to implicate Ms. Rita Scott, when in reality, both she and Plaintiff were totally unaware of the crimes comitance.

22.    After careful examination and review of the available evidence, it can be concluded that Plaintiff was falsely arrested on June 23, 1991 under the guise of being needed as a material witness. After Detective Perry could find no evidence that Plaintiff was at the crime scene at the time of the murder and that he had nothing to do with the murder of the victim, (Ex. 05 # 21-20) Detective Perry then coerces a confession from Danny that implicates both Plaintiff and Ms. Scott in the crime when in reality, he knew that neither of them had anything to do with it. This was done because Detective Perry knew that he could stereotype the Plaintiff as a nobody with a past, who had no one to help him, and that he could do as he pleased with Plaintiff despite what the law says, and no one would be the wiser. As for the Jury, they would buy it hook, line, and sinker. This was done in cooperation with Dent Morriss from the Robertson County Attorney's Office. A basic investigation into the facts of Plaintiff's case for justice's sake would have easily uncovered the truth, if such an investigation had just been held. The pinnacle of the American judicial system is that a defendant receives a fair and impartial trial. However, this cannot be achieved when the Court itself refuses to uphold a defendant's rights in a proceeding as is evidenced in this case. At the core of a fair trial is the right to effective assistance of counsel. It must be conceded that Plaintiff's attorney did not take even the basic steps to investigate Plaintiff's case. The evidence is that he should have been able to tell that Danny's confession was untruthful as it contradicts all the evidence in the case that comes before it, and there was no confrontation as to how the State's case grew in color and detail after that coerced confession.

They all allowed Plaintiff to be tried and convicted for Voluntary Manslaughter and sent to prison for it when they all knew that he was not guilty of the charge. Because of this conspiracy perpetrated by the State of Tennessee and the blatant violation of Plaintiff's rights, the State of Montana now wishes to persecute Plaintiff further by forcing him to register as a violent offender when he is no such thing, as his own past record will show. Plaintiff has never been convicted of an offence where he ever personally injured any person. The State of Tennessee had fabricated evidence showing that Plaintiff had somehow influenced Danny thus compelling him to act, when in reality Danny just got "topped off" and acted on his own violation, without the support or help of another living soul.

## REQUEST FOR INJUNCTIVE RELIEF

23.  Plaintiff has a well established history of mental health issues with the Social Security Administration and even the State of Washington. Plaintiff, however, does not have a history of committing violent acts. Plaintiff's condition can cause him to enter a hyper focused state where he gets in a state of near single minded focus on a perceived wrong or injustice against him to the detriment of everything else. Plaintiff was always aware that he had not played a part in the killing of Danny's victim and that there had been some kind of foul play on the part of Tennessee in convicting Plaintiff for Voluntary Manslaughter when he had killed no one, nor participated in the killing of anyone. However, Plaintiff had neither the evidence nor venue in which to challenge this injustice served on him by the State of Tennessee under color of law. Plaintiff has argued to the State of Montana that the duty to register does not apply to him because of his misinterpretation of Montana Code Annotated § 46-23-503. It is standard procedure for the Sentencing Court to inform an individual of the duty to register at the time of sentencing, however, in Plaintiff's case, Tennessee did not have a Violent Offender Registry and was never a

part of the original sentence. This led Plaintiff to erroneously believe that he was not required to register anywhere, at any time ever, as it was never stipulated at sentencing and he had never been required to do so anywhere else.

24.    Taking Plaintiff's past experience with Law Enforcement in Tennessee and what their actions have done to Plaintiff's life into consideration, it can be easily seen how a person with a moderate mental health disability could erroneously conclude that law enforcement officials in Montana were trying to pull a "fast one" on him like Tennessse had done. However, the point and purpose of this claim is not to challenge Plaintiff's duty to register in the state of Montana, but it is to instead challenge the evidence being used by the State of Montana to prosecute Plaintiff for failure to register as a violent offender. Plaintiff's past conviction in Montana for failure to register is not in question here either. It is being used simply to show that in the past, Plaintiff has indeed argued against the state of Tennessee's actions against him to his Attorney, the Prosecution and the Court, at that time.

25.    On November 13, 2019, Plaintiff was arrested in Ravalli County, MT for Failure to Register as a Violent Offender. At this point, Plaintiff had yet come across the evidence detailed in (Ex 05) the McAlpin Appeal and therefore, still could not prove the conspiracy that was perpetrated against Plaintiff by Detective Perry and the State of Tennessee. And even if Plaintiff had this evidence then, he still lacked a venue in which to challenge that evidence. The evidence that the State of Montana is relying on to try, convict, and sentence Plaintiff with, is the 1992 Voluntary Manslaughter Conviction from the State Of Tennessee. Plaintiff is not contesting the State of Montana's current charge against him with this claim. He is contesting the evidence they are relying on to prosecute him with, as it was derived from a Conspiracy to Obstruct Justice that severely denied Plaintiff the majority of his constitutional rights. Currently the State of Montana

has issued a warrant for Plaintiff on a charge of Failure to Appear, as Plaintiff missed a Court appearance. Plaintiff felt that the State's proceedings are denying him the right of Due Process of Law as he is being denied Confrontation of the State's evidence that is being used to prosecute him, and if convicted, then confined and denied his liberty and freedom unjustly.

26.    On February 12, 2020, Plaintiff emailed the Clerk of the District Court of Ravalli County (Exhibit 08) Paige Trautwein (Exhibit 05) the McAlpin Appeal to put before the Court in support of Motions submitted by Plaintiff, one in which was to proceed Pro se, as Plaintiff felt Counsel was not effectively challenging the State's evidence against him. By law, upon receiving these documents, the Court had a duty to disclose these documents to the County Attorney, William Fulbright, and Plaintiff's Attorney from the OPD, Melanie D'Isidoro. Plaintiff argued to the Court that the evidence used by the State of Tennessee was not sufficient enough to sustain a conviction for Voluntary Manslaughter, and included a Tennessee case titled State vs. Maupin which argues: "For the reasons stated below, we agree with the conclusion reached by the intermediate court that the evidence is insufficient to sustain a conviction of murder in the first degree under T.C.A. § 39-2-202(a)(2) (Supp. 1988) and, therefore, Maupin's conviction should be reversed." Plaintiff's position is that if he was not at the scene of the crime and had nothing to do with the actual killing of the victim, then he cannot be guilty of actually killing the person, a requirement for the charge of Voluntary Manslaughter. Plaintiff also raised to the Court that he had been tried for Aiding and Abetting, however, was convicted for Voluntary Manslaughter instead, *before the crime had ever been proven in a Court of Law.* Plaintiff also asked the Court to dismiss the State's case based on the evidence and argument presented. It was not. Now Plaintiff has a warrant for his arrest. Plaintiff feels that the state of Montana is denying him the right to confront the evidence used against him as it is still not an option offered as a defence by

his Attorney Melanie D' Isidor and feels the only way he will avoid an inevitable conviction is the Diversity of Citizenship claim set forth herein. On December 15, 2020, Plaintiff once again emailed the Clerk of Court as well as Ms. D'Isidoro of the OPD and Ms. Wetzsteon of the County Attorney's Office, to forward to Mr. Fulbright (Exhibit 09). This time Plaintiff details the information set forth in this claim that challenges the State's evidence against Plaintiff and included a zip folder containing all of the exhibits listed for this suit. The State of Montana still however wishes to prosecute Plaintiff and Plaintiff is still not being allowed to confront the State's case by effectively challenging the State's evidence.

28.   Plaintiff is effectively being denied the ability to properly defend himself against the State's charge, as the State is being allowed to argue that Plaintiff committed Voluntary Manslaughter and needs to be registered for the public's safety, to the Jury. However, Plaintiff is not allowed to defend by arguing the original charge is a false arrest and false imprisonment based on fabricated evidence concocted by Detective Perry when he had no real substantial evidence implicating Plaintiff in any killing. There is no possible way for Plaintiff to have a fair and impartial proceeding when he is being denied the opportunity to confront the State's evidence in challenging the original evidence from the 1992 conviction that the State of Montana is using as it's evidence against Plaintiff. Plaintiff therefore asks this Court to lift the Ravalli County warrant from Plaintiff, so that he may proceed with this Diversity of Citizenship claim without fear of being jailed and eventually incarcerated. Plaintiff also asks this Court for an injunction on the proceedings of the State of Montana as charged by Ravalli County until the outcome of this suit is resolved.

### REQUEST FOR COUNSEL

29.   Plaintiff has no real venue in which to raise this claim, nor had all the evidence until now, and the claim would be dismissed in Tennessee due to claimed time related issues even though the conviction was a result of the stated conspiracy and was derived from blatantly violating Plaintiff's Constitutional rights. It is the current harm to Plaintiff by the State of Montana in it's drive to prosecute Plaintiff for not wanting to register as a Violent Offender when he would never have had to do so had Detective Perry and the State of Tennessee followed the laws and procedures that Plaintiff is required to follow. The evidence presented in the exhibits set forth and establishes a strong prima facie case that makes it very evident that the State of Tennessee had no evidence to charge Plaintiff with a crime, until Detective Perry fabricated it by coercing a confession implicating both Ms. Rita Scott and Plaintiff in a crime neither of them had anything to do with, as is evident from all the evidence preceding Danny's coerced confession. Plaintiff could have never been convicted without Danny's coerced false confession, would never have gone to prison for Voluntary Manslaughter, or convicted of failure to register as a violent offender in Montana and most importantly, Plaintiff would not be facing more prosecution over this matter had Detetive Perry not fabricated the evidence at the onset of the case.

30.   This case deals with complex issues that are beyond Plaintiff's ability to articulate, as is evidenced by Plaintiff's past attempts to free himself from the conspiratorial actions of the State of Tennessee and the registration imposed by the State of Montana. Plaintiff is facing jail and possible incarceration if convicted and then doomed to lifetime registration in the State of Montana, despite the fact that Plaintiff is not a Violent Offender in reality. Plaintiff had to seek assistance in writing up this claim to get it to the point of filing, and could not have completed it on his own behalf. Plaintiff needs Counsel to help better articulate this claim. Plaintiff does not have the means or ability to investigate, gather discovery, or to litigate and mitigate against these

Defendants and their legal acumen and adequately argue his case before this Court as Plaintiff is too emotionally involved, and does not possess the skill in which to properly present this case in which involves two States and one conspiracy, and Plaintiffs freedom resting in the balance.

## RELIEF REQUESTED

31.   The Defendants did willfully and wantonly in blatant disregard to the Constitution and the rights that it infers on the Plaintiff, did violate those rights. The participants of this conspiracy willfully committed these malicious acts of negligence with the intent of causing Plaintiff great personal harm and emotional distress by illegally arresting him and fabricating evidence to incarcerate him with. At the center of this conspiracy against Plaintiff's rights are the documents in exhibit along with the coerced confession elicited by Detective Perry that were used as evidence against the Plaintiff, a violation of the following laws and statutes:

39-16-503. Tampering with or fabricating evidence.

(a)  It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to: (1)  Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; or (2)  Make, present, or use any record, document or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.

(b)  A violation of this section is a Class C felony, and it also constitutes a 5th and 14th Amendment Violation of Due Process of Law.

18 USC 1623: False declarations before grand jury or court.

18 U.S. Code § 371. Conspiracy to commit offense or to defraud the United States or it's agencies.

18 U.S. Code § 1505. Obstruction of proceedings before departments, agencies, and committees.

32.   The Defendants all in their Official and Individual capacity participated in a Conspiracy to deny the Plaintiff's rights and privileges of; Equal Protection of the Law;  Denial of Due Process; committed Prosecutorial Misconduct; gave Ineffective Assistance of Counsel and a denial of Confrontation as granted by the Constitution. The Defendants all did Aid and Abet Detective Ronnie Perry| in that they assisted him in the conspiracy and the cover-up of an activity they knew to be illegal.

33.   For the reckless, wanton, negligent, disregard of Plaintiff's Constitutional rights, the false arrest and imprisonment of Plaintiff in the state of Tennessee for 8 ½ years and the subsequent imprisoning due to the State of Montana incarcerating Plaintiff for Failure to Register as a Violent Offender in between the years of 2010 to 2015, these incidents would never have had occurred  if not for the State of Tennessee's Conspiracy that has taken thirteen and a half years of Plaintiff's life already, and is threatening to take more if the State of Montana is allowed to continue with its current prosecution against the Plaintiff.  Plaintiff asks for, in relief, for the loss of life and liberty and the extreme emotional distress caused by the Defendant's conspiracy against him, the sum of $1,000,000 for each year of incarceration in both the State of Tennessee and Montana that has resulted from these conspiratorial deads of the Defendants. Plaintiff asks for the sum total of 13.5 million in monetary damages. Plaintiff also asks for the assistance of competent Counsel to help Plaintiff define his remedial damages that he wishes to seek from the Defendant's listed as, the State of Tennessee and The Attorney General of the State of Tennessee. Plaintiff asks that the named Defendants listed only in their Official Capacities hold these individuals accountable that did willfully violate Plaintiff's rights, so that they cannot use the color of law to violate anyone else's rights.

34.   Plaintiff hereby requests a jury trial on these claims.

**Douglas Scott McAlpin**

January 2, 2021

State of Montana                                    )

                                                   : ss

County of _Lewis & Clark_ )

_Douglas S. McAlpin_, being first duly sworn, upon oath, deposes and says as follows: I am the Plaintiff in the foregoing Complaint. I have read the foregoing Complaint and the facts of the matter contained herein are true, correct and complete to the best of my knowledge and belief.

Plaintiff

Signed and sworn to (or affirmed) before me this Second day of January, 2021.

(Signature of notary)

_GAYLE G. ASTORE_
_____ (Printed name of notary public)

Notary public for the state of _Montana; County of Lewis & Clark_

Residing at: _Helena, MT 59601_

My commission expires:
_02/15/2021_

GAYLE G. ASTORE
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
February 15, 2021